UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PATRICIA MERCADEL                                    CIVIL ACTION

VERSUS                                               NO. 07-3425

LIBERTY MUTUAL FIRE                                  SECTION "N"  (2)
INSURANCE COMPANY, ET AL.

ORDER AND REASONS

Before the Court is Motion for Summary Judgment (Rec. Doc. No. 34), which was

opposed.  For the following reasons, the motion is granted.

I.      BACKGROUND

On August 7, 2006, Plaintiff Patricia Mercadel ("Mercadel") visited a JP Morgan Chase

& Company branch located in Kenner Louisiana.  (Petition, ¶ III).  During the visit, Mercadel

was in the process of returning a safe deposit box to its slot when the box's metal vault door fell

off its hinges and struck her in the face.  (Petition, ¶ IV).  As a result, Mercadel claims to have

suffered injuries to "the bones, ligaments, muscles, tendons, nerves, and other structures" in her

face. (Petition, ¶ V).  Mercadel alleges that these injuries required subsequent and continual

medical treatment.  (*Id.*)

Thereafter, Mercadel filed suit against JP Morgan Chase & Company ("JPMC"),

claiming that it owned, operated, and controlled the area of the bank wherein she was injured.

(Petition, ¶ VI).  Mercadel also named as a defendant Liberty Mutual Fire Insurance Company

("Liberty Mutual"), who issued a liability insurance police to JPMC.  Specifically, Mercadel alleged that JPMC created an unreasonably dangerous condition on its premises and knew or should have known of the hazardous condition that existed in its bank.  (*Id.*)  Now, JPMC and Liberty Mutual (collectively, "Defendants") have filed the instant Motion for Summary Judgment, claiming that Mercadel cannot show that they knew, or in the exercise of reasonable care, should have known of the ruin, vice, or defect that caused the damage or that the damage could have been prevented by the exercise of reasonable care, and that they failed to exercise such reasonable care required by La. C. C. art. 2317.1.

## II.    LAW & ANALYSIS

### 1.    Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law ." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554,

91 L.Ed.2d 265 (1986); see also *Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir.1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553; see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir.2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir.2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System*, L.L.C., 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id*. (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir.2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate"

precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), cert. denied, 513 U.S. 871, 115 S.Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir.2002).

### 2.    Knowledge of the Alleged Defect

Louisiana law provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew, or in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.  Nothing in this article shall preclude the court from the doctrine of *res ipsa loquitor* in an appropriate case.

La. C. C. Art. 2317.1.  For a defendant to be held liable for a plaintiff's injuries caused by a defective thing, a plaintiff must show: (1) that the defendant had custody of the thing that caused the plaintiff's damages; (2) that the thing was defective because it had a condition that created an unreasonable risk of harm; (3) that this defective condition caused the damage; and (4) that the defendant knew or should have known of the defect.  *Harper v. Advantage Gaming Company*, 880 So.2d 948, 2004 WL 1837573 (La.App. 2nd Cir. 8/18/04).  Because the defendant does not bear the burden of proof at trial, it can obtain summary judgment by showing that there is an absence of factual support pertaining to one of the above elements. *Johnson v. Entergy Corp.*,

4

36-323 (La.App. 2 Cir. 9/20/02) 827 So.2d 1234. In the instant case, Defendants argue that

Mercadel lacks sufficient evidence to prove that JPMC had actual or constructive knowledge of

any problems with the safety deposit box door.

Specifically, this incident did not occur on Mercadel's first visit to the JPMC Kenner

branch. She testified that at the time this incident occurred, she had visited the same safety

deposit box at this particular branch on three or four previous occasions. (Exhibit 1 to Rec. Doc.

34, pp. 62, 66). Mercadel explained that the usual procedure was for the employee to remove the

box and hand it to her and, later, either she or a bank employee would return the box to the slot.

(Exhibit 1 to Rec. Doc. 34, pp. 63-65). Mercadel admitted that she had personally returned the

box to its slot before the date of the incident as part of a "normal reaction." (Exhibit 1 to Rec.

Doc. 34, p. 65). She claimed that there were no signs posted indicating that she could not do so.

(*Id*.) Mercadel also testified that she never had any problems getting the box back into the slot

nor had she ever had any problems with the door of the safety deposit box on the times she

visited the safety deposit box before the day of her accident. (*Id.*) On all the occasions on which

she visited the safety deposit box, Mercadel never once observed that the door was loose, was

swinging too much, or was exhibiting any other problems. (Exhibit 1 to Rec. Doc. 34, pp. 66-

67). Mercadel denied doing anything different on the date of the incident, when returning the

safety deposit box to its slot, than she had done on any other time before the incident. (Exhibit 1,

pp. 68-69, 74). However, Mercadel claims that after inserting the safety deposit box into the

slot, she barely touched the door to the slot to close it when it swung down and injured her.

(Exhibit 1 to Rec. Doc. 34, pp. 73-75). All parties concede that after the door was placed back

on the hinges, no further repairs were made to the door and no further incidents resulted. (Rec.

Doc. 34, p. 3; Rec. Doc. 38, p. 5).

Defendants provided the Court with the affidavit of Susan Villani ("Villani"), the branch manager at the time the incident occurred, who stated that she had never received a complaint about the safety deposit boxes and was unaware of any complaints concerning safety deposit box doors falling off their hinges at the Kenner branch.  (Exhibit 2 to Rec. Doc. 34; Rec. Doc. 42-3)[1]. In fact, Villani explained that in her 33 years in banking, she had never before seen a safety deposit box door fall off its hinges.  (Exhibit 2 to Rec. Doc. 34; Rec. Doc. 42-3).  Villani also stated that the door was placed back on the hinges after the accident and there has been no further incident with the door to Mercadel's safety deposit box.  (Exhibit 2 to Rec. Doc. 34; Rec. Doc. 42-3).  Bradley Laborde, an employee at this particular branch testified similarly. (Exhibit 3 to Rec. Doc. 34; Rec. Doc. 42-4).  Accordingly, Defendants claim that failure to satisfy the element pertaining to knowledge of the alleged defect is fatal to the Mercadel's case.[2]

Instead of arguing that Defendants did have actual or constructive knowledge of the alleged defect in the safety deposit box door, Mercadel asserts that under the doctrine of res ipsa loquitur, she can make a prima facie case of negligence against Defendants using circumstantial evidence to show that the type of injury sustained would not have occurred in the absence of Defendant's negligence.

---

[1]     The Court notes that there is an obvious error with the two signed affidavits of Susan Villani and Bradley Laborde (See Rec. Doc. 42).  The second pages to these two-page affidavits are mistakenly switched.  One can determine from the numbering of the paragraphs and the signatures that Page 2 of Rec. Doc. 42-4 is actually page 2 of Rec. Doc. 42-3.  Similarly, page 2 of Rec. Doc. 42-3 is actually page 2 of Rec. Doc. 42-4.

[2]     Defendants also note that Mercadel did not identify any experts she plans to call at trial concerning the safety deposit box door defect.

### 3.       The Doctrine of *Res Ipsa Loquitur*

Generally, a plaintiff's burden of proof in a civil suit is preponderance of the evidence.
*National Union Fire Ins. Co. Of Louisiana v. Harrington*, 02-832 (La. App. 3 Cir. 2003), 854
So.2d 880.  The plaintiff can meet this burden of proof with direct or circumstantial evidence.
*Sonnier v. Bayou State Mobile Homes, Inc.*, 96-1458 (La.App. 3 Cir. 4/2/97); 692 So.2d 698,
*writ denied*, 97-1575 (La.10/3/97), 701 So.2d 201. When direct evidence of a defendant's
negligence is not available, the doctrine of *res ipsa loquitur* assists the plaintiff in presenting a
prima facie case of negligence. *Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr.*, 564 So.2d
654 (La.1989).  The doctrine of *res ipsa loquitur* serves as an exception to "the general rule that
negligence is not to be presumed" and the doctrine "must be sparingly applied." *Spott v. Otis
Elevator Co.*, 601 So.2d 1355, 1362 (La.1992). "[ *R*]*es ipsa loquitor* permits a factfinder to
examine the circumstances surrounding an incident and infer negligence on the defendant's part."
*Perkins v. Wurster Oil Corp.*, 04-692, pp. 4-5 (La.App. 3 Cir. 11/10/04), 886 So.2d 1229, 1233,
*writ denied*, 04-3011 (La.2/18/05), 896 So.2d 35.

*Res ipsa loquitur* properly applies when "all of the circumstances surrounding the
accident are of such a character that, unless an explanation can be given, the only fair and
reasonable conclusion is that the accident was due to some omission of the defendant's duty."
*Lawson v. Mitsubishi Motor Sales of Am., Inc.*, 938 So.2d 35, 44-45 (La.2006) (quoting *Larkin v.
State Farm Mut. Auto. Ins. Co.*, 97 So.2d 389 (La.1957)).  There are three prerequisites to the
application of the doctrine: (1) the accident must be of a kind which ordinarily would not occur
in the absence of negligence on the part of someone; (2) the injury must be caused by an agency
or instrumentality within the exclusive control of the defendant; and (3) the occurrence must not

have been due to any voluntary action on the part of the plaintiff. *Dugas v. Kansas City Southern Ry. Lines*, 473 F.2d 821, 824 (5th Cir.1973). The second element is satisfied if the circumstances indicate that the defendant's negligence, and not other plausible explanations, was the probable cause of the accident. *Spott*, 601 at 1362; *Baxter v. Sonat Offshore Drilling, Inc.*, 98-1054 (La.App. 1 Cir. 5/14/99), 734 So.2d 901.  In order to use this doctrine, the plaintiff must set forth facts on which the doctrine may be applied. *Cangelosi*, 564 So.2d at 665-666.  The plaintiff need not eliminate all other possible causes or inferences, but must present evidence that indicates at least a probability that the injury would not have occurred without negligence. In other words, the plaintiff must show not only that an accident occurred or that an accident was caused by the negligence of someone, but also that the circumstances warrant an inference of defendant's negligence. *Id.*  A plaintiff should sufficiently exclude the inference of his own responsibility or the responsibility of others besides the defendant in causing the accident. *Id.*

"The doctrine merely assists the plaintiff in presenting a prima facie case of negligence when direct evidence is not available." *Cangelosi*, 564 So.2d at 665.  First, the Court notes that it is not clear whether direct evidence is actually unavailable to Mercadel.  As Defendants point out in their Motion for Summary Judgment, Mercadel did not identify or apparently retain any experts to examine the subject safety deposit box, or to testify regarding the allegedly defective safety deposit box door.  As the Louisiana Third Circuit has recently noted, a plaintiff's failure to obtain direct evidence does not, in itself, warrant the application of the *res ipsa loquitur* doctrine. *Trent v. PPG Industries, Inc.*, 05-989 (La. App. 3 Cir. 5/10/06), 930 So.2d 324, 330. In *Trent*, the Court essentially reasoned that the plaintiff may have been able to find direct evidence had he retained an expert.  Similarly, here, Mercadel has neglected to obtain an expert opinion on the

8

alleged defect in the safety deposit box door.  She cannot now claim that the doctrine of *res ipsa loquitur* allows her to avoid having to set forth evidence which may have been available to her had she retained an expert.

Additionally and aside from this first point, the Court finds that the doctrine of *res ipsa loquitur* does not apply in this case, because this is not a case wherein  the only fair and reasonable conclusion is that the accident was due to some act omission of the defendant's.  See *Lawson*, 938 So.2d at 44-45.  The Court finds that Mercadel has failed, on the showing made, to produce evidence which would satisfy her burden of proving that the negligence of JPMC was the most plausible explanation for her injury. In *Harper v. Advantage Gaming Company*, 880 So.2d 948, 2004 WL 1837573 (La.App. 2nd Cir. 8/18/04), the Louisiana Second Circuit found that the plaintiff failed to demonstrate factual circumstances showing that the *only* reasonable conclusion was that the defendant's breach of duty caused the accident.

Under Louisiana law, as set forth herein, JPMC's negligence cannot be inferred simply because the safety deposit box door suddenly, and without warning, came off its hinges and struck Mercadel.  Mercadel has failed to provide any factual support to prove that the safety deposit box door at issue otherwise presented an unreasonable risk of harm or that JPMC had constructive or actual knowledge of the defect before the incident occurred.  Essentially, Mercadel's assertion that JPMC's negligence was the cause of her injuries is not supported by any factual or expert evidence. Furthermore, for JPMC to be liable under La.Civ.Code art. 2317.1, it must be demonstrated that it knew or should have known that the safety deposit box door was defective.  Nothing in the record indicates any such knowledge by JPMC.  Indeed, all evidence presented demonstrates to the contrary.  Mercadel herself testified that she had never

had any problems with the safety deposit box door on the three or four occasions she had visited the bank prior to the date of the incident.  Also, Villani stated that the bank has never had any problems of this nature with safety deposit box doors. In her 33 years in banking, she has never had any complaints about safety deposit boxes prior to the incident with plaintiff.  Failure to satisfy this "knowledge" inquiry is fatal to the Mercadel's case.

### 4.    Subsequent Remedial Measures

Mercadel's last argument regards subsequent remedial measures[3] that were allegedly pertinent to safety deposit boxes.  The Court fails to see how simply placing the safety deposit box door back on its hinges was a subsequent remedial measure.  Further, all parties concede that after the door was placed back on the hinges, no further repairs were made to the door and no further incidents resulted.  (Rec. Doc. 34, p. 3; Rec. Doc. 38, pp. 5, 7) Finally, Mercadel attempts to argue that since the accident she has returned to the bank and has seen signs that read "safety deposit boxes need to be checked."  (Rec. Doc. 38, p. 7, Exhibit 1 to Rec. Doc. 34, p. 75). Mercadel fails to explain what this means, how this applies to this situation, or how this is allegedly a "precautionary measure."  Further, this Court fails to see how article 407 of the Louisiana Code of Evidence is relevant to the issue presently before the Court regarding JPMC's

---

[3]    Subsequent remedial measures are referenced in Article 407 of the Louisiana Code of Evidence, which provides:

> In a civil case, when, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This Article does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, authority, knowledge, control, or feasibility of precautionary measures, or for attacking credibility.

LSA-C.E. art. 407.

knowledge of the allegedly defective door.  On the showing made, this argument fails to create a genuine issue of material fact that will save Mercadel's case from summary judgment.

## III.      CONCLUSION

Therefore, because there are no genuine issues of material fact in this matter, Defendants are entitled to summary judgment.

Accordingly, **IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 34)** is **GRANTED**.

New Orleans, Louisiana, this 14th day of August, 2008.

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**